**UNITED STATES**

v.

**Technical Sergeant Arthur F. McMAHON, III, FR 086–30–1520, 2200th Support Squadron, Warner Robins Air Logistics Center (AFLC).**

**ACM 22238.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 9 April 1977.

Decided 29 Nov. 1977.

*See United States v. Henry,* 23 U.S.C.M.A. 70, 48 C.M.R. 541 (1974).

Appellate Counsel for the Accused: Colonel Robert W. Norris and Major Gary C. Smallridge.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Major Gilbert J. Regan.

Before EARLY, FORAY and HERMAN, Appellate Military Judges.

## DECISION

EARLY, Chief Judge:

Tried by general court-martial, military judge alone, the accused was convicted, consonant with his pleas, of sodomy with a child under the age of 16 years, in violation of Article 125, Uniform Code of Military Justice, 10 U.S.C. § 925. The approved sentence extends to a dishonorable discharge, confinement at hard labor for eight months and reduction to the grade of E–4.

In the one assignment meriting our attention, the accused contends that:

The Military Judge erred by *not* ordering the convening authority to have the accused examined by a sanity board composed of at least one psychiatrist.

We disagree.

Prior to trial (and shortly after discovery of the offenses leading to the charge), the accused was examined by the Chief of Psychological Services of the base hospital, a clinical psychologist, who described the accused as having an anti-social personality, a character and behavior disorder and a diagnosis of pedophilia and excessive drinking. His report stated, in pertinent part:

The diagnostic category of anti-social personality includes an assumption of the ability to adhere to the right. I feel that it is appropriate to mention at this time, however, that the patient's social history . . . although not eliminating his ability to adhere to the right, increased significantly the probability that he would engage in similar behavior. This is not to be construed as implying that the patient acted under a compulsion, but that the characteriological aspects of the patient's personality were such that the patient was not concerned whether or not the act was morally right or wrong.

.    .    .    .    .

In addition, the results of the psychological testings suggest that he is mentally capable of cooperating in his own defense.[1]

At trial, defense counsel moved to have the accused examined by a sanity board composed of at least one psychiatrist. In support of his motion he submitted a letter which he had written earlier to the convening authority requesting that the accused be evaluated by a psychiatrist, giving as reasons the accused's history of chronic alcoholism and his demeanor when being interviewed by his two counsel. In addition,

---

1. A representative battery of psychological tests were administered to the accused and formed the basis for this diagnosis.

defense counsel submitted a memorandum from the trial counsel which stated he had reviewed the manifestations related by defense counsel with the clinical psychologist,[2] and the latter stated he had personally observed the accused at length on the date mentioned by defense counsel and he did not observe the symptoms related by defense counsel.[3] The military judge denied the motion,[4] saying:

> In this particular case I'm going to rely on the documentation submitted by Doctor Cayton, Chief of the Psychological Services, as well as other factors I have observed and deny the request.

The question as to whether an inquiry into the mental capacity of the accused should be made is an interlocutory question upon which the military judge makes the final ruling. Manual for Courts-Martial, 1969 (Rev.), paragraph 122*b*, change 1. The test to be applied is whether there is "some evidence which could reasonably tend to show that the accused is insane or was insane at the time of his alleged offense . . . ." Id. at paragraph 122*a*.

■ In the absence of evidence raising a question of the accused's mental capacity, the Government may rely on the common sense experience of mankind that most men are sane. *United States v. Carey*, 11 U.S.C.M.A. 443, 29 C.M.R. 259 (1960); *United States v. Biesak*, 3 U.S.C.M.A. 714, 14 C.M.R. 132 (1954). The mere assertion that one is insane is not necessarily sufficient to require an inquiry or to raise the issue of insanity. *United States v. Biesak*, supra; Manual, supra, at paragraph 122*b*(2), change 1. The actions and demeanor of the accused as observed by the court may be sufficient to warrant inquiry as to the accused's sanity, *United States v. Biesak*, supra; but peculiarities of conduct are not necessarily indicative of a state of mind which absolves a person from responsibility for his criminal acts. *United States v. Carey*, supra. Further, irrational actions prompted by intoxication do not raise the issue of mental responsibility. *United States v. Lewis*, 14 U.S.C.M.A. 79, 33 C.M.R. 291 (1963). Nor does a diagnosed character or personality disorder equate to a lack of mental responsibility. *United States v. Fleming*, 7 U.S.C.M.A. 543, 23 C.M.R. 7 (1957); *United States v. Jones*, 45 C.M.R. 697 (A.F.C.M.R.1972).

■ Turning to the evidence presented to the military judge in support of defense counsel's motion, we find that the accused had been seen over a period of some two months by a clinical psychologist who diagnosed the accused as having a character and behavior disorder, and who opined that the accused was able to adhere to the right and was capable of cooperating in his own defense. The military judge had ample opportunity to observe the accused during the dialogue concerning the latter's desire for trial by judge alone.[5] In contradistinction to this was the defense counsel's unsupported statements of his concern for the accused's competency and mental responsibility. The decision as to ordering a further inquiry into the accused's sanity was solely for the military judge to make. On examination of the record as a whole, we find no abuse of that discretion, and, further, we find no evidence reasonably tending to show that the accused was insane either at the time of the commission of the offenses charged or at the time of trial. See *United States v. Canterbury*, 41 C.M.R. 924 (A.F.C.M.R.1969). Further, we hold that there is no requirement in military law that an examination of an accused for mental responsibility must perforce be conducted by a psychiatrist.

---

**2.** The psychologist had seen the accused some four times after his initial report (for a total of some six interviews).

**3.** Defense counsel also alluded to an oral report from a civilian psychologist who advised that the accused suffered from a "latent psychosis" and "could become psychotic."

**4.** The convening authority also denied defense counsel's request.

**5.** Manual for Courts-Martial, 1969 (Rev.), paragraph 78.

The findings of guilty and the sentence are

AFFIRMED.

FORAY, J., concurs.

HERMAN, J., not participating.